# THOMASON *vs.* ODUM.

[DETINUE FOR SLAVES.]

1. *Charge referring legal question to jury.*—A charge is erroneous which refers to the jury the determination of the question how far parol evidence is inconsistent with a record.

2. *What constitutes record in arbitration case.*—When a pending suit is submitted to arbitration without an order of court, under an agreement that the award shall be made the judgment of the court, the submission and award do not constitute a part of the record, unless so made by order of the court, and identified.

3. *Implied waiver of objection to illegal evidence.*—The failure to object to the admission of evidence, or to move its exclusion, is an implied waiver of all objections to its admissibility.

4. *Form and effect of judgment of retraxit.*—A judgment of *retraxit*, which is as complete a bar as a judgment on verdict, can only be entered by the plaintiff in person ; but a recital in the judgment entry, that "the parties came by attorney, and the plaintiff enters a *retraxit*," sufficiently shows that the *retraxit* was entered by the plaintiff in person.

5. *Conclusiveness of judgment in trover.*—A judgment on verdict in trover, in favor of the defendant, is conclusive on the plaintiff, in an action of detinue instituted by him against one claiming under said defendant, if the judgment was rendered before the defendant parted with the property, unless the plaintiff claimed in the detinue suit on a title acquired after the rendition of such judgment ; *secus*, if the trover suit was commenced after the defendant therein had parted with the property, which afterwards came by regular transfers to the defendant in the detinue suit.

6. *Former recovery.*—A former recovery in trover, with satisfaction thereof, is a bar to an action of detinue against one claiming under the defendant, either before or after the rendition of such judgment.

7. *Admissibility of parol evidence to affect record.*—Parol evidence cannot be received to vary or contradict a record ; but, where the record does not show on what ground the judgment was rendered, the deficiency may be supplied by parol.

APPEAL from the Circuit Court of Conecuh.

Tried before the Hon. ANDREW B. MOORE.

THIS action was brought by Matthew D. Thomason against Aaron Odum, to recover a negro woman named Watsey, together with her three children; and was commenced in April, 1849. It was before this court at its June term, 1853, and is reported in 23 Ala. 480. The

pleadings in reference to the statute of limitations of Florida, which was set up by the defendant, were carried to a sur-rejoinder; but no question seems to have arisen about them on the last trial. The confused state of the record renders it impossible to present an intelligible statement of the facts, except so far as they may be gathered from the bill of exceptions, which is as follows :

"Be it remembered, that this cause came on to be heard at this term. The action was detinue, for a slave named Watsey, and her children, under the pleadings as appears upon record, and upon agreement that any defense might be made under the general issue which could be made by any plea in bar and replies thereto; and that the plea of former recovery, with any legal reply thereto, was to be considered regularly pleaded and replied. The defendant introduced a transcript from the records of the county of Perry, Alabama, a copy of which is appended hereto as a part of this bill of exceptions, and marked 'exhibit A;' and the plaintiff introduced the written testimony of John Deloach and William Adair, two of the arbitrators named in said transcript. On this subject these two witnesses testified, that they were called on by M. D. Thomason to sit in arbitration, with the other arbitrators named, about certain lawsuits pending between N. H. Hobson and Thomas B. Bond, and M. D. Thomason and N. H. Hobson, in Perry county, and certain papers held among the parties; that it was during the fall term of the circuit court of Perry; that neither Hobson nor Bond was present, and the arbitration was conducted by M. D. Thomason and Hobson's brother, and agreed to by them. The matters in arbitration, to the best of my knowledge, were the suits and papers above referred to; and the papers referred to the suits. There was no titles to negroes referred to us, nor do they recollect that any were named; but the arbitration was alone upon the suits, and papers belonging thereto, and not as to the title to any negroes. This was all the proof on this branch of the case.

"The proof otherwise tended to show, that plaintiff was the owner of said negroes; that they had been unlawfully taken off by said Hobson, as the agent of one Grimes;

that Grimes had no legal authority for having them taken off, (though, as to this, there was some conflict of evidence;) that they were carried by Hobson to Florida, and sold to one Mrs. Lawson, as the property of Grimes; and that Mrs. Lawson sold them to Odum, the defendant in this suit, in whose possession they were when the suit was commenced."

"Exhibit A" to the bill of exceptions, above referred to, contains, 1st, a writ in an action of trespass, in the circuit court of Perry, issued on the 6th May, 1841, at the suit of M. D. Thomason against N. H. Hobson, to recover damages for the defendant's unlawful act in taking and carrying away a negro woman, named Watsey, and her two children; 2d, a memorandum, entitled in the marginal entry "declaration," but signed by M. D. Thomason, in these words:

"Demand in the circuit court of Perry county, Alabama. The statements of ——, M. D. Thomason, N. H. Hobson, four negroes, for which I have commenced suit as above. Hobson sold the negroes for J. W. Grimes. Said negroes I consider worth some $3,200. This claim I am desirous to show mine, especially as said Hobson has claims against T. B. Bond on my account, as well as claims against me; all of which I propose to leave to arbitration."

The award of the arbitrators is next set out, which is dated May 11th, 1842, and is as follows: "We, H. D. Hare," (and others, setting out all their names,) "the arbitrators chosen and appointed in this case, after the hearing of testimony on both sides, make the following award: That M. D. Thomason pay $50 in complete satisfaction of bond made by Thomas B. Bond to N. H. Hobson, L. B. Lusk; and that Hobson give up to said Thomason said bond, as considered; and that said Thomason enter a credit, in the case now pending in the circuit court of this county, against said Hobson, for the negroes, in detinue, or in a suit for damages, as aforesaid, made in the statement given to us as a basis of our arbitration. Given under our hands and seals," &c.

The submission to arbitration is then set out, which is signed by Thomason and J. D. Hobson, acting as agent

of said N. II. Hobson ; describes the matters to be submitted as "the demands made by said Thomason against said N. H. Hobson, and all other demands heretofore existing between the parties, of whatever description, either in law or equity ;" and provides that the award of the arbitrators, or a majority of them, "be made to the circuit court of Perry, as soon as may be, and be made the judgment final of said court."

The judgment of the circuit court, rendered at the spring term, 1842, is last set out, and is as follows : "This day came the parties, by their attorneys ; and the plaintiff enters a *retraxit* in this case, agreeably to an award of arbitrators. It is therefore considered by the court, that the defendant go hence without day, and recover of the plaintiff his costs by him about his defense in this behalf expended, for which execution may issue."

"Under this state of facts, the court charged the jury,—

"1. That the testimony of the witnesses, as to what was submitted to arbitration, and as to what was decided, must not be regarded by them, so far as the same was in writing contained in the transcript of the record from Perry county.

"2. That if the jury find from the evidence that the girl Watsey, named in the record from Perry county, is the same negro now sued for, then the record from Perry county would bar the plaintiff from recovering in this action ; it being admitted, that the other negroes sued for were children of Watsey, born since the arbitration."

The charges of the court to the jury, to each of which the plaintiff excepted, are now assigned as error.

MARTIN, BALDWIN & SAYRE, for the appellant.

WATTS, JUDGE & JACKSON, *contra.*

WALKER, J.—The legal proposition, that parol evidence was not admissible to vary the record, which was intended to be asserted by the first charge, was certainly correct ; but the charge is objectionable, because its effect was to shift from the court to the jury the duty of determ-

ining what parol evidence was inconsistent with the record.—DeGraffenreid v. Thomas, 14 Ala. 681.

2. The clerk has copied into the transcript of the record of the circuit court for Perry county a memorandum, made by the plaintiff, of matters which he proposed to submit to arbitration, an agreement between the plaintiff and one Hobson to arbitrate, and the award of the arbitrators, as if those papers were parts of the record. It is possible that the court regarded those papers as a part of the record. The arbitration was not made by order of court; and those papers are not identified, and made matters of record. They were not, therefore, a part of the record, and were not admissible in evidence upon the clerk's certificate.

3. We would not, however, reverse the case, on account of the inadmissibility of this evidence; because it was competent for the plaintiff to waive the absence of the original papers, and proof of their execution; and this he must be understood to have done, by the omission to object to their introduction, or to move the court to exclude them.

4. The second charge of the court assumes, that if the identity of the slave mother was established, the descent of the others from her after the arbitration being admitted, the record, of itself, presents a complete bar to the maintenance of the suit. We proceed to consider the correctness of this assumption. The judgment entry is in the following words: [copying it.] Does that judgment bar the maintenance of this action? To the decision of that question, it is necessary for us to ascertain whether the entry is a technical *retraxit;* and, if it be, what is its effect.

A *retraxit* can only be entered by the plaintiff in person; but it is decided in Conk v. Lowther, 1 Ld. Raymond, 597, that such a recital, as that contained in the entry under consideration, shows that the plaintiff in person entered the *retraxit.* The entry says, that the parties came by their attorneys; but it says, the plaintiff entered the *retraxit.* We must intend, upon the authority of the case from Ld. Raymond, that the plaintiff in person entered the *retraxit.* We must understand the word

*retraxit* in its well ascertained technical meaning.—In 3 Bla. Com. 296, a *retraxit* is thus defined: "A *retraxit* differs from a nonsuit, in that the one is negative, and the other positive: the nonsuit is a mere default and neglect of the plaintiff, and therefore he is allowed to begin his suit again upon the payment of costs; but a *retraxit* is an open and voluntary renunciation of his suit in court, and by this he forever loses his action." So, in Beecher's case, 8 Rep. 58, the same principle is thus stated: "A *retraxit* is a voluntary acknowledgment" by the plaintiff "that he hath no cause of action, and therefore he will no farther proceed, &c.; and therefore is a bar forever."—In 1 Dunlap's Practice, 494, (an American work,) it is said: "The plaintiff may also openly appear in court, and renounce his suit; and this is as complete and effectual a bar, as if a verdict had been rendered for the defendant, and he can never afterwards commence another action for the same cause."—See, also, Bingham on Judgments, 48, (13 L. L. top p. 20;) 7 Bacon's Abr. 215, *Nonsuit*, A; Bullock v. Perry, 2 St. & P. 319.

5. The entry of *retraxit*, upon the authority of the foregoing citations, would, of itself, have precisely the same effect as if there had been a verdict and judgment upon the merits of the case. The action was trover. A verdict and judgment in favor of Hobson, the defendant in the trover suit, would have been conclusive against the plaintiff, in favor of the defendant in this case, holding under Hobson, if the judgment had been rendered before he, Hobson, parted with the property, unless the plaintiff claimed in this suit upon a title acquired after the judgment. But, if the trover suit was commenced after Hobson, who was the defendant therein, had parted with the property, which, by a regular succession of transfers, came to the defendant in this suit, the plaintiff would not be estopped. The defendant in this case could not be estopped or affected by a judgment against Hobson, from whom such defendant derived title, after he (the defendant in the judgment) had parted with the property; and, as estoppels must be mutual, it could not avail the defendant in this suit.—Foster v. Earl of Derby, 1 Adol. & El.

783; Lock v. Nosborn, 3 Mod. 141; 1 Greenleaf on Ev. § 536; Adams v. Barns, 15 Mass. 365; 2 Starkie on Ev. 194. It follows, that the judgment of *retraxit* was, or was not, a bar in this case, according as it was rendered before or after the sale by Hobson. The bill of exceptions does not disclose with certainty whether the judgment of *retraxit* was before or after the sale by Hobson. It was a question for the jury under the facts, and the court was not authorized to assume that it was previous to the sale. The charge was, therefore, erroneous.

6. The action in the circuit court of Perry county was, as we infer from the imperfect record, trover. If the plaintiff's cause of action against Hobson for the conversion was satisfied, it would defeat the suit of the plaintiff in this case, whether it was before or after Hobson sold, because a party is only entitled to one satisfaction. The award of the arbitrators directs, that the plaintiff, M. D. Thomason, shall enter a *credit* in the case pending in the circuit court of Perry against Hobson, "for the negroes, in detinue, or in suit for damages." It does not appear whether this award, that the plaintiff should enter a credit, was predicated upon a decision by the arbitrators in favor of the defendant, Hobson, on the question of title, or upon a decision upon the question of title in favor of the plaintiff, and a satisfaction of the plaintiff for the conversion by Hobson in the numerous matters of controversy submitted to the arbitrators. The arbitrators may have decided the question of title in favor of the defendant, and therefore directed the plaintiff to credit Hobson in the suit against him; or they may have decided the question of title in favor of the plaintiff, and satisfied his claim, on account of the conversion by Hobson, by allowing to him a credit on some charge in favor of Hobson against him. It is not disclosed upon which ground the award was rendered. That was, therefore, an appropriate subject for parol evidence. If, upon another trial, it should be shown that the arbitrators satisfied the plaintiff's claim growing out of Hobson's conversion of the property, by an allowance made to Thomason, the plaintiff, in some other matter embraced in the arbitration,

the award and the judgment of *retraxit* would be conclusive against Thomason in this case, whether it was before or after the sale by Hobson, because the plaintiff is not entitled to two satisfactions. If it should appear that the arbitrators adjudged the question of title against the plaintiff, he is estopped by it, and the judgment of *retraxit* thereupon rendered, if they were before Hobson sold the property.

The judgment of the court below is reversed, and the cause remanded.